ALBRIGHT ET AL. *v.* CRIM ET AL.

[No. 14,289. Filed April 19, 1933. Rehearing denied September 28, 1933.]

*Henry G. Neff, Frederick Van Nuys, Alfred Ellison, George M. Barnard, Raymond L. Walker,* and *B. D. Emanuel,* for appellants.

*Pence & O'Neill, Bagot, Free & Bagot,* and *Albert Diven,* for appellees.

SMITH, J.—Appellees brought this action to enjoin appellants from using certain premises located in

Anderson, Indiana, for a funeral home and undertaking business.

The complaint is in two paragraphs; the first paragraph alleges that appellants violated and were violating a certain zoning ordinance of the City of Anderson, Indiana, which prohibited using the property of appellants for business purposes, said property being situated in a residence district; the second paragraph of complaint is upon the theory of a private nuisance with special damage to appellees. To both paragraphs of complaint, appellants filed an answer in general denial. This closed the issues and the cause was tried by the court.

There was a special finding of facts with conclusions of law thereon made at the request of appellants. The appellants rely upon four assignments of error, three of them calling in question the conclusions of law, and the fourth, the overruling of the motion for a new trial.

The first assignment of error is included in the second and third, which challenges conclusions of law one and two. The motion for new trial has two grounds therein: (1) That the decision of the court is not sustained by sufficient evidence; (2) that the decision of the court is contrary to law.

After this appeal was perfected and the briefs filed, appellants filed a motion which they denominate a verified motion to dismiss parts of appeal. This motion sets up that, since this appeal was perfected, and the briefs filed, the planning commission of the city of Anderson amended the zoning ordinance relied upon by appellees in the first paragraph of complaint; and that, by such amendment, the property of appellants in controversy in this case has been taken into the business district of the city of Anderson so as to permit the establishment of a funeral home

thereon, as far as the ordinance is concerned. To the verified motion to dismiss parts of the appeal are attached copies of the amended ordinance and the proceedings in connection therewith.

The matter set forth in this motion has not been controverted by appellees. Therefore, the question presented by the first paragraph of complaint as to the violation of the zoning ordinance by appellants is now moot, and this appeal will be determined upon the issue presented in the second paragraph of complaint, namely, that of whether the conducting of this funeral home at the location, and in the manner alleged, constitutes a private nuisance so that its operation as a funeral home and undertaking establishment can be enjoined.

The motion of appellants to dismiss parts of the appeal is overruled. The court in deciding this case takes cognizance, however, of the fact that the matter raised in the first paragraph of complaint upon the question of violation of a zoning ordinance is moot, and the case will be decided solely upon the issue as presented in said second paragraph of complaint. It will not be necessary to notice further the first paragraph of complaint.

The second paragraph of complaint charges in substance that West Eighth Street is purely a residential district, and that appellees are the owners of certain real estate therein which is adjacent and in close proximity to property of appellants which is being used as an undertaking parlor and funeral home. The complaint further charges that appellants have partly moved their undertaking business into said premises at 231 West Eighth Street in the city of Anderson, Indiana, which for more than fifty years has been occupied as a dwelling; that they began to operate thereon an undertaking and mortuary business at this location,

which is purely a residential section for several blocks on either side of Eighth Street; that the appellees' residences were located adjacent to or immediately across the street therefrom; that the property of appellees was valuable and desirable for residential purposes; that the location and operation of the undertaking and mortuary business by the appellants at that place will materially decrease the value of the appellees' properties; that in the operation of said place as an undertaking and mortuary business, dead bodies will be taken on said premises for the purposes of autopsies and embalming; that persons meeting with accidental death will be brought there and left for some time pending identification and preparation for burial; that funerals will be conducted upon and from said premises, and there will be frequent coming and going of hearses with dead bodies therein; and that a large number of dead bodies will be carried into and out of said premises in the day time and night time and will be kept on said premises for long periods of time, all to the annoyance, inconvenience and damage of appellees; that it will create such a constant reminder of death as to depress the appellees, render them less able to resist disease, and under the circumstances render the conduct of the business in that location, a private nuisance, to the great and irreparable damage of these appellees; that the annoyance and damage to appellees is special and peculiar and different from the public in general, and that their property will be materially and greatly depreciated in value by and on account of said business.

In the special finding of facts, the court found the location of appellees' premises and those of appellants; that said premises of appellants being used for an undertaking and mortuary business were located at 231 West Eighth Street in the residential district of the city of Anderson; and that such location has always

been devoted solely to residential purposes, and exclusively to the erection and maintenance of private homes and dwellings. The special findings further show that the appellants purchased the lot number 9 in John Davis' First Addition in the city of Anderson, for the purpose of carrying on and conducting their undertaking business, and that they had been in such business in the city of Anderson many years prior thereto.

The finding of facts further shows:

"13. That at the time of the commencement of this action, the defendants had moved their stock of undertaking goods upon said premises and were operating their undertaking business thereon."

Then, after finding that the appellees' property was all located in close proximity to the appellants' property, or adjacent thereto, the court found as follows:

"That in the operation and maintenance by the defendants of their undertaking establishment and mortuary business on the said premises large numbers of burial caskets will be stored and carried on said premises and unloaded thereon, large numbers of deceased human bodies will be taken to said premises for the purpose of preparing them for burial and will be kept there from a period of a few hours to several days and while thereon will undergo the process of embalming. That occasionally persons meeting accidental and violent death will be taken to said premises for the purpose of identification and preparation for burial. That there will be funerals conducted upon and from said premises and there will be frequent going and coming of hearses with dead bodies therein, and at times of funerals large numbers of vehicles will be congregated in and around said premises; that dead bodies will be taken to said premises both in the daytime and night-time. That in the garage of said premises, hearses, ambulances, and funeral cars will be stored day after day and many times will be allowed to stand on the street in front of and near said premises.

"15½. . That the constant presence of dead persons on said premises, the holding of funerals

thereon, the carrying of dead bodies in and out of said premises, the presence of hearses and funeral cars on and around said premises, will create such a constant reminder of death as to depress the plaintiffs and the members of their families; and will be a constant annoyance and inconvenience to them and because thereof they will be unable to enjoy their homes in peace, quiet, and comfort."

The court further found that the real estate of the appellees was damaged in value by reason of the location of the undertaking and mortuary establishment of appellees anywhere from $8,000 to as much as $12,000 on the different properties of the appellees. The court also found that the appellants are conducting their undertaking and mortuary business in a lawful, sanitary, and scientific manner, and that no physical destruction of appellees' properties will result from their business; that the injury to appellees and to their real estate as found in the special finding of facts will arise from the use and occupation of appellants' said real estate as an undertaking establishment in the manner found in the special findings. Upon this special finding of facts, the court stated its conclusions of law, two in number: "(1) That upon the above and foregoing facts, the law is with the plaintiffs. (2) That the defendants should be and they are hereby perpetually enjoined from using the following described real estate in Madison County, Indiana, to wit: The North part of Lot No. Nine (9) in John Davis' First Addition to the City of Anderson and the brick dwelling house located thereon known as No. 231 West Eighth Street, for the operation of an undertaking and mortuary business and funeral home thereon."

The only question left in this case for decision is, Does the operation and maintenance by the appellants of an undertaking and mortuary establishment in a purely residential section of the city of Anderson, Indi-

ana, where such section has been used exclusively for residential purposes and has been built up with large, substantial, and valuable homes, constitute a private nuisance under the facts and circumstances in this case?

In determining this question, we will have to look for precedent outside of the state of Indiana, for this precise question is one of first impression to the courts of appeal in this state. An undertaking and mortuary establishment, or a funeral home, is not a nuisance *per se*. This is a well established principle in this country.

Then, the question arises, Does the operation and maintenance by the appellants of the undertaking establishment and mortuary business on the premises heretofore described where a large number of caskets will be stored and unloaded thereon; where large numbers of dead human bodies will be taken for preparation for burial, and will be kept there for a period of a few hours to several days, and will undergo the process of embalming; where, occasionally, persons meeting violent and accidental death will be taken for preparation for burial; from where funerals will be conducted; where there will be frequent coming and going of hearses with dead bodies therein; where, at time of funerals, large numbers of vehicles will be congregated; where dead bodies will be taken to and from, both at night time and in the day time, create such a constant reminder of death to the appellees who reside in the immediate vicinity of these premises, that it would depress them and the members of their families, and will become a constant annoyance and inconvenience to them, and because thereof, they will be unable to enjoy their homes in peace, quiet, and comfort? We can best explain the view of this court upon this proposition by quoting

from the case of *Bragg et al.* v. *Ives* (1927), 149 Va. 482, 140 S. E. 656, 660, wherein the court said:

"We agree with those decisions, however, which hold that when an undertaking establishment invades a community which has previously been strictly residential, and the character of the business, or the manner in which it is conducted, is such as will naturally depress the spirits and sensibilities of those living in close proximity to it, to the extent of weakening their power to resist disease and destroying the comfort, repose and enjoyment of their homes, making them less desirable and thereby materially depreciating their value, then such business is a nuisance to those so affected by it. It is true that the objection to the business must be something more than imaginary, ·or an individual aversion to the proximity of the establishment and to the thought of death superinduced by its nearness and the activities carried on in connection with it. The annoyance complained of must be something real, substantial and tangible—one that affects the normal person, not the over-nervous or supersensitive, nor yet the hardened and stoical, but the ordinary men, with ordinary ·sensibilities, tastes and feelings. The maintenance of an undertaking establishment under circumstances that produce such a result upon such a person goes beyond mere mental disturbance—it involves the physical enjoyment and comfort of the home, with which no business, however lawful and necessary, has the right to interfere."

In a recent case decided by the Supreme Court of Lewis County in New York, *Arthur et al.* v. *Virkler et ux.* (July 26, 1932), 258 N. Y. Supp. 886, 890, the judge of that court, in a well-considered opinion upon the subject of the enjoining of a nuisance created by the operation of an undertaking establishment in a residential district, stated:

"I conclude, that by moving their undertaking establishment from a business district into the midst of a district where for a long period of years only a church and private residences have existed,

"was an illegal encroachment by the defendants upon the plaintiffs' property rights. It has rendered plaintiffs' residence properties physically uncomfortable, and accordingly is a private nuisance which equity will abate."

In the above case, the judge has compiled nearly all of the decisions of our courts for and against the enjoining of the operation of an undertaking business in a residential district, and cites, on page 891, a great many cases supporting the theory that to move into and operate an undertaking and mortuary business in a purely residential section, which has always been occupied as a residential section, and is built up with large and substantial homes, from the very nature of the business located in such residential district, it will interfere with the free use and enjoyment of residence property, producing a constant annoyance and inconvenience to occupants of adjacent and nearby buildings, and render them physically uncomfortable, and thereby create such a depressed condition upon the part of residents in close proximity thereto, as will of necessity cause them physical discomfiture and annoyance, as well as a depreciation in the value of their property. In the absence of a strong showing of public necessity, we think the location of an undertaking and mortuary business in such a district should not be permitted over the protest of those who would be materially injured thereby. So, in this case, we hold that from the facts as found by the court, its conclusions of law were correct, and that the moving by the appellants of their undertaking and mortuary business into this strictly residential section, as shown herein, and the operation and maintenance of their undertaking and mortuary business therein, under the facts as found by the court, constitute a nuisance and an injury to appellees' property by a depreciation of the value thereof, as well

as to the comfort and enjoyment thereof by the appellees.

The law in respect to nuisances rests upon the maxim, "Every man must so use his own property as not to interfere with that of his neighbor." *Laughlin, Wood & Co.* v. *Cooney et al.* (1930), 220 Ala. 556, 126 So. 864, 866. We quote with approval from the Cooney case, *supra,* where the court said, on page 866:

> "While it must be conceded that the business of conducting funeral parlors is a lawful business and necessary to the proper care and disposition of the dead, nevertheless the fact remains that its inherent nature is such, if located in a residential district, it will inevitably create an atmosphere detrimental to use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in such district should not be allowed to protrude into such residential district over the protests of those who would be materially injured thereby."

To the above statement, the court cited a large number of authorities.

There are some authorities, namely, in the states of Oregon, Washington, New Jersey and Kentucky, that do not fully support this theory; still, the greater weight of authority coincides therewith.

*Cooley on Torts,* (fourth edition 1932) vol. 3, p. 180, section 435, quoting from the case of *Arthur* v. *Virkler, supra,* says:

> "Undertaking Establishment. An undertaking establishment is not a nuisance *per se,* and by some courts it is held that even when located in an exclusively residential district, with the result that, because of sentimental repugnance on the part of those who might reside near it, property values in the vicinity would depreciate, such establishment would not be enjoined. By what appears to be the weight of modern authority, however, it is held

that the location of such a business in a residential district is sufficiently objectionable to make it a nuisance. Thus it has been stated: The inherent nature of an undertaking establishment 'is such that, if located in a residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in such a district should not be permitted over the protest of those who would be materially injured thereby.' "

To substantially the same effect is *Joyce on Nuisances*, p. 162 quoted in an Oklahoma case (269 Pacific 1098), from a Maryland case, as follows:

"No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie. And this, too, without regard to the locality where such business is carried on; and this, too, although the business may be lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business."

The greater weight of authority is to the effect that the establishment and operation of an undertaking and embalming business in a purely residential section, under circumstances which would cause a depressed feeling to the families in the immediate neighborhood, and a constant reminder of death which appreciably impairs their happiness, and damages the value of their property, constitutes a nuisance. *Cunningham* v. *Miller et ux.* (1922), 178 Wis. 22, 189 N. W. 531, and cases cited on page 534; *Jordan et al.* v. *Nesmith et al.* (1928), 132 Okla. 226, 269 Pac. 1096; *Dillon* v. *Moran et al.*

(1926), 237 Mich. 130, 211 N. W. 67; *Leland et al.* v.
*Turner et al.* (1924), 117 Kan. 294, 230 Pac. 1061;
*Saier et al.* v. *Joy et al.* (1917), 198 Mich. 295, 164 N.
W. 507, L. R. A. 1918A, p. 825; *Higgins et al.* v. *Block
et al.* (1925), (Ala.), 104 So. 429; *Tureman et al* v.
*Ketterlin et al.* (1924), (Mo.), 263 S. W. 202.

As was said in the *Cunningham* v. *Miller, supra,*
(Wis.),

> "We think it is equally clear that maintenance of
> an undertaking and embalming establishment in a
> residential section must inevitably operate to de-
> crease substantially property values, destroy the
> comfort and happiness of people residing in the
> immediate vicinity, and is an unwarrantable inva-
> sion of the rights of others."

To entitle the appellees to injunctive relief in this
case, the depressing influence and discomfort caused by
the maintenance of the undertaking and mortu-
ary establishment must create such depressing
influence upon a normal person and not one
who is unduly nervous or highly supersensitive, as was
said by the Supreme Court of Michigan, *Saier* v. *Joy,
supra:*

> "It requires no deep research in psychology to
> reach the conclusion that a constant reminder of
> death has a depressing influence upon the normal
> person."

Our own Supreme Court in Indiana, in a suit to
enjoin the operation of a mill as a nuisance, in the case
of *Owen et al.* v. *Phillips et al.* (1881), 73 Ind. 284, 295
said:

> "The owner of property is entitled to enjoy the
> ordinary comforts of life, and that right is not to
> be measured by the notions of the people of a par-
> ticular locality."

Appellants say that there is no showing of an irre-
parable injury. We think the depreciation in the value

of the property shown and the constant depressing influence the maintenance of this undertaking establishment will have upon the appellees, and the resultant annoyance and discomfort, all tending to destroy their peace of mind and happiness, constitute an irreparable injury within the meaning of our law. Furthermore, our court has said that in order to entitle one to injunctive relief, it is not absolutely necessary to allege or prove irreparable injury, but a showing that there is a great injury will be sufficient. *Biggs* v. *Bank of Marshfield* (1929), 90 Ind. App. 467, 473, 169 N. E. 71.

We therefore hold, that the locating and operating of an undertaking establishment, and funeral home, by appellants in the location and under the circumstances as shown in this case, constituted a private nuisance; and that the lower court did not err in stating its conclusions of law; that there was sufficient evidence to sustain the finding of facts; and the decision of the court is not contrary to law.

Judgment affirmed.